Rasha Gerges Shields (Cal. Bar No. 218248)
rgergesshields@jonesday.com
Tyler J. Scott (Cal. Bar No. 341039)
tscott@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: +1.213.243.2719
Facsimile: +1.213.243.2539

Jeffrey D. Baltruzak (admitted *pro hac vice*)
jbaltruzak@jonesday.com
Daniel Paul Johnson (admitted *pro hac vice*)
dpjohnson@jonesday.com
JONES DAY
500 Grant Street Suite 4500
Pittsburgh, PA 15219
Telephone: +1.412.391.3939
Facsimile: +1.412.394.7959

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSITY OF SOUTHERN CALIFORNIA, a private public-benefit nonprofit corporation; JEWISH VOICES FOR PEACE ("JVP"), a business organization, form unknown; STUDENTS FOR JUSTICE IN PALESTINE ("SJP"), a business organization, form unknown; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: 2:25-cv-06375-MWC <br><br> [Notice of Related Case Pending: Case 24-cv-05712-FLA] <br><br> **DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)** <br><br> Date:  Friday, August 29, 2025 <br> Time:  1:30 PM <br> Place:  Courtroom 6A <br><br> Complaint Filed: July 9, 2025 <br> Complaint Served: *Not yet served* <br> Complaint Received: July 11, 2025 <br> Complaint Removed: July 11, 2025 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, August 29, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6A of this Court, located at 350 West 1st Street, Los Angeles, California, before the Honorable Judge Michelle Williams Court, Defendant University of Southern California ("USC") will and hereby does move the Court for an order dismissing each of Plaintiffs' causes of action against USC pursuant to Rule 12(b)(6) and this Court's inherent powers.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the accompanying Request for Judicial Notice ("RJN"), the proposed order submitted herewith, the complete files and records in this action, the complete files and records in the predecessor to this action (*Doe Jewish USC Faculty Member 2004 et al. v. University of Southern California et al.*, No. 2:24-cv-05712-FLA (C.D. Cal. Jul. 8, 2024)), the argument of counsel, and such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which began on July 25, 2025 and was completed telephonically on July 29, 2025, at Plaintiffs' counsel's request.

Dated: August 1, 2025

Respectfully submitted,
JONES DAY

By: */s/ Rasha Gerges Shields*
    Rasha Gerges Shields
Attorneys for Defendant
UNIVERSITY OF SOUTHERN
CALIFORNIA

---

USC'S MOTION DISMISS PLAINTIFFS' COMPLAINT

# **TABLE OF CONTENTS**

BACKGROUND ......................................................................................... 2

    I.    The Prior Action ................................................................... 2

    II.    Plaintiffs' Allegations ......................................................... 3

        A.    The Student Plaintiff's Allegations ............................. 3

        B.    The Faculty Plaintiff's Allegations ............................. 4

    III.    Other Allegations ................................................................ 5

ARGUMENT ............................................................................................. 6

    I.    Plaintiffs' Civil Rights Claims Fail ...................................... 7

        A.    Plaintiffs Again Fail to Allege USC Had the Intent to Violate Their Civil Rights or to Authorize Violence Against Them ............................................................... 7

        B.    Plaintiffs' Civil Rights Claims Fail for Additional Specific Reasons. ..................................................................... 12

            1.    Bane Act (Count 1) ........................................ 12

            2.    Unruh Act (Count 2) ...................................... 13

            3.    Ralph Act (Count 3) ....................................... 15

            4.    Title VI (Count 10) ........................................ 15

            5.    Section 1981 (Count 11) ................................ 17

            6.    Section 220 (Count 12) ................................... 17

    II.    Plaintiffs' Tort Claims Again Fail. ...................................... 17

        A.    The Student Plaintiff's Intentional Tort Claims (Counts 7-8) Again Fail for Lack of Necessary Elements. ........ 17

        B.    The Student Plaintiff's Negligence Claims (Counts 4-5) Again Fail for Lack of Necessary Elements. .............. 18

    III.    Plaintiffs' Remaining Claims Fail. ...................................... 19

        A.    Breach of Contract (Count 6) ...................................... 19

        B.    Declaratory Relief (Count 9) ....................................... 20

    IV.    This Should Be The Last Complaint Against USC. ............. 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ..................................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... 3, 9, 11

*Augustus v. Cnty. of Los Angeles*,
    No. 2:20-cv-11255-FLA, 2023 WL 2799117 (C.D. Cal. 2023) ..................... 7

*Bautista v. Los Angeles Cnty.*,
    216 F.3d 837 (9th Cir. 2000) .................................................................... 3, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 5

*Cabrera v. Google LLC*,
    2023 WL 5279463 (N.D. Cal. 2023) .......................................................... 19

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ..................................................................... 6

*Cider Riot, LLC v. Patriot Prayer USA, LLC*,
    544 P.3d 363 (Or. App. Ct. 2024) .............................................................. 19

*City of Reno v. Netflix, Inc.*,
    52 F.4th 874 (9th Cir. 2022) ...................................................................... 20

*Commodari v. Long Island Univ.*,
    89 F. Supp. 2d 353 (E.D.N.Y. 2000) ......................................................... 16

*Concerned Jewish Parents v. Liberated*,
    2024 WL 5274857 (C.D. Cal. 2024) .......................................................... 16

*Conde v. Sensa*,
    259 F. Supp. 3d 1064 (S.D. Cal. 2017) ....................................................... 6

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
    80 F.4th 943 (9th Cir. 2023) ...................................................................... 20

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ......................................................................... 8, 16, 17

ii

*Day v. California Lutheran Univ.*,
    2024 WL 649239 (C.D. Cal. 2024) ..................................................................... 18

*Doe Jewish USC Faculty Member 2004 et al. v. University of Southern
    California et al.*,
    No. 2:24-cv-05712-FLA (C.D. Cal. Jul. 8, 2024) ......................................*passim*

*Doe v. Rector & Visitors of George Mason Univ.*,
    149 F. Supp. 3d 602 (E.D. Va. 2016) ..................................................................... 9

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................................................. 9

*Ernesto Jasso v. Cnty. of Los Angeles et al.*,
    2015 WL 13916216 (C.D. Cal. 2015) .................................................................. 13

*Est. of Miller v. Cnty. of Sutter*,
    2020 WL 6392565 (E.D. Cal. 2020) ...................................................................... 8

*Ewalt v. GateHouse Media Ohio Holdings II, Inc.*,
    2023 WL 2018775 (S.D. Ohio 2023) .............................................................. 3, 5

*Fed. Trade Comm'n v. Walmart Inc.*,
    664 F. Supp. 3d 808 (N.D. Ill. 2023) .................................................................... 6

*Gabrielle A. v. Cnty. of Orange*,
    10 Cal. App. 5th 1268 (2017) ......................................................................... 7, 15

*Gerwaski v. Nevada*,
    2025 WL 1294107 (D. Nev. 2025) ...................................................................... 13

*Green Crush LLC v. Paradise Splash I, Inc.*,
    2018 WL 4940825 (C.D. Cal. 2018) .................................................................... 19

*Groveman v. Regents of Univ. of California*,
    2025 WL 391312 (E.D. Cal. 2025) ...................................................................... 16

*Harris v. Cap. Growth Invs.*,
    52 Cal. 3d 1142 .................................................................................................... 7

*Holliday v. Jones*,
    215 Cal. App. 3d 102 (1989) .............................................................................. 18

*Johnson v. Trans. Agency, Santa Clara Cnty., Cal.*,
    480 U.S. 616 (1987) ............................................................................................ 16

iii

*Jones v. Kmart Corp.*,
    17 Cal. 4th 329 (1998) ........................................................................ 12

*Karasek v. Regents of the Univ. of California*,
    2015 WL 8527338 (N.D. Cal. 2015) ................................................ 17

*Landau v. Haverford Coll.*,
    2025 WL 1796473 (E.D. Pa. 2025) ........................................... *passim*

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ...................................................... 13, 17

*Ltd. v. Koninklijke Philips Electronics, N.V.*,
    2006 WL 6667002 (S.D. Cal. 2006) .................................................. 9

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ........................................................................ 12

*M.L. ex rel. D.L. v. Concord Sch. Dist.*,
    86 F.4th 501 (1st Cir. 2023) .............................................................. 8

*McGowan v. Weinstein*,
    505 F. Supp. 3d 1000 (C.D. Cal. 2020) .......................................... 12

*Molien v. Kaiser Found. Hosps.*,
    27 Cal. 3d 916 (1980) ...................................................................... 19

*Morales v. City & Cnty. of San Francisco*,
    603 F. Supp. 3d 841 (N.D. Cal. 2022) ............................................ 11

*N.A.A.C.P. v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ........................................................................ 19

*Newtok Vill. v. Patrick*,
    21 F.4th 608 (9th Cir. 2021) ............................................................ 12

*Osborne v. Yasmeh*,
    1 Cal. App. 5th 1118 (2016) ............................................................ 14

*Parm v. Nat'l Bank of Cal., N.A.*,
    242 F. Supp. 3d 1321 (N.D. Ga. 2017) ............................................ 3

*Piedra v. Dugan*,
    123 Cal. App. 4th 1483 (2004) ........................................................ 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

*Race Winning Brands, Inc. v. Gearhart*,
    2023 WL 4681539 (C.D. Cal. 2023) .................................................. 20

*Ray v. Am. Airlines, Inc.*,
    755 F. Supp. 3d 1277 (C.D. Cal. 2024) .......................................... 7, 17

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) .................................................................. 19

*Rogers v. Western Univ. Health Sciences*,
    2017 WL 11567381 (C.D. Cal. 2017) ............................................ 18

*Shoyoye v. Cnty. of L.A.*,
    203 Cal. App. 4th 947 (2012) .......................................................... 7

*Singelyn v. PNC Bank Nat'l Ass'n*,
    2023 WL 11915610 (C.D. Cal. 2023) ............................................ 19

*Smith v. Cnty. of Santa Cruz*,
    2020 WL 6318705 (N.D. Cal. 2020) .............................................. 13

*So v. Shin*,
    212 Cal. App. 4th 652 (2013) ........................................................ 18

*StandWithUs Ctr. v. MIT*,
    742 F. Supp. 3d 133 (D. Mass. 2024) ..................................... 2, 8, 11

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .......................................... 20

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ........................................................... 6

*Walsh v. Tehachapi Unified Sch. Dist.*,
    827 F. Supp. 2d 1107 (E.D. Cal. 2011) ............................................ 8

*White v. Square, Inc.*,
    7 Cal. 5th 1019 (2019) .................................................................. 14

**STATUTES AND RULES**

42 U.S.C. § 1981 .............................................................................. 7, 17

CAL. CIV. CODE § 51 .......................................................................... 7, 14

CAL. CIV. CODE § 51.7 ....................................................................... 7, 15

CAL. CIV. CODE § 52 .................................................................................. 14

CAL. CIV. CODE § 52.1 .......................................................................... 7, 13

CAL. EDUC. CODE § 220 .................................................................. 7, 8, 17

CAL. EDUC. CODE § 94367 ......................................................................... 9

Fed. R. Civ. Proc. 12(b)(6) ......................................................................... 6

**OTHER AUTHORITIES**

B. Haring, *USC Pro-Palestinian Encampment Cleared Again By
    Police,* available at https://deadline.com/2024/05/usc-pro-
    palestinian-encampment-cleared-police-1235904798/ (last accessed
    Aug. 1, 2025) ....................................................................................... 10

Judicial Council of California, Civil Jury Instructions, No. 1620 .......................... 18

KTLA 5, *Police clear protest encampment at USC*, available at
    https://www.youtube.com/watch?v=v7ibgdWRMkg ((last accessed
    Aug. 1, 2025)) ...................................................................................... 10

M. BENDER, 11 CALIFORNIA FORMS OF PLEADING AND PRACTICE
    ANNOTATED (2025) .............................................................................. 15

NBCLA, *Swastikas found on USC campus*, available at
    https://www.youtube.com/watch?v=XqbZtOuKVVo (last accessed
    Aug. 1, 2025) ....................................................................................... 10

*Negotiator's tricks: pizza and patience*, Columbus Dispatch (May 27,
    2007), available at
    https://www.dispatch.com/story/news/2007/05/27/negotiator-s-
    tricks-pizza-patience/23758229007/ (last accessed Aug. 1, 2025) ................... 11

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs purport to be a faculty member ("Faculty Plaintiff") and student ("Student Plaintiff") at the University of Southern California ("USC"). This is Plaintiffs' second lawsuit and fourth complaint against USC arising from the acts of alleged "third party protestors" during the Spring 2024 semester. Compl. ¶ 12.

The Court (the Honorable Fernando L. Aenlle-Rocha) has already analyzed and dismissed each of Plaintiffs' core claims. *Doe Jewish USC Faculty Member 2004 et al. v. University of Southern California et al.*, No. 2:24-cv-05712-FLA (C.D. Cal. Jul. 8, 2024) ("Prior Action") at ECF 72 ("Dismissal Order"). In fact, most of the Faculty Plaintiff's claims were dismissed *with prejudice*, yet Plaintiffs nevertheless defy the Court's order and assert them again here. That underscores Plaintiffs' problem: This refiled complaint is an improper attempt to circumvent a fully briefed (second) motion to dismiss (Prior Action, ECF 83 (taking second motion under submission without argument)) and to move the case to what Plaintiffs perceive as a favorable, state forum. Had Plaintiffs wished to add new claims or parties, they should have complied with the Prior Action's deadlines and moved for leave to amend. They did not.

In any event, little has changed and Plaintiffs' claims still fail. Plaintiffs add new civil rights claims under federal law and State Education Code to the Complaint. But those claims mirror the elements of the State civil rights claims that the Court previously dismissed. And merely adding more claims does not answer the key question posed by the Court's Dismissal Order (at 7-8): How can civil rights claims that require USC to share a *specific intent* to harm *on the basis of religion* plausibly proceed when the Complaint affirmatively alleges, among other things, (a) an adverse relationship between USC and the offending "Campus Terrorist[s]," (b) that USC "made the decision to call in the LAPD," to "clear the encampment," and to "arrest 93 people" for "trespassing," (c) that USC "quelled *in a matter of hours*" a second attempted disruption, and (d) that alleged antisemitic "protests at USC have [in fact] been reduced" *by USC's actions*? Compl. ¶¶ 13, 32, 35, 38, 52, 76, 134 (emphasis

1

added).  Other courts agree that the inclusion of such allegations means that intent-based claims are not plausibly alleged.  *See, e.g.*, *StandWithUs Ctr. v. MIT*, 742 F. Supp. 3d 133, 142 (D. Mass. 2024) (dismissing case where "Plaintiffs frame[d] [University's] response to the conflict largely as one of inaction.  But the facts alleged tell a different story"); *Landau v. Haverford Coll.*, 2025 WL 1796473, at *9 (E.D. Pa. 2025) (similar).  As for Plaintiffs' other claims, they continue to omit basic and necessary elements: For instance, what "battery" (requiring actual contact) or "assault" (requiring imminent contact) did the Student Plaintiff experience?  None is alleged.  Though Plaintiffs' incendiary rhetoric and repetition has increased in this new Complaint, the relevant allegations specific to these two Plaintiffs remain the same, and remain insufficient.

After two lawsuits and four complaints, dismissal with prejudice is warranted.

## BACKGROUND

### I.  THE PRIOR ACTION

Plaintiffs filed the Prior Action in May 2024 and an amended complaint in June 2024.  *See* Prior Action, ECF 1.  After removal, the Court dismissed that complaint in its entirety in the March 2025 Dismissal Order (including many claims with prejudice).  That order thoroughly addressed the elements of each of Plaintiffs' claims, thereby giving them a roadmap of exactly what to allege (should they have a good-faith basis).  It permitted the Student Plaintiff to amend her allegations, and the Faculty Plaintiff to amend certain others.  Dismissal Order 20-21.

Taking up the Court's invitation, Plaintiffs filed their third complaint in March 2025.  Prior Action, ECF 77.  Though expressing an intention to add new claims (*id.* ¶ 20), Plaintiffs never moved to do so, and they allowed the court-ordered deadline for further amendment to elapse, *see* Prior Action, ECF 82, at 10-11.  USC moved to dismiss the third complaint, and the Court took USC's motion under submission in late April 2025. Prior Action, ECF 78, 81, 82, 83.  As the parties awaited the Court's decision, Plaintiffs abruptly changed course and voluntarily dismissed the Prior

1    Action.  Prior Action, ECF 84.

2          A few weeks later, Plaintiffs filed the instant action with a new complaint (their

3    fourth) in state court, and USC removed it again.  USC now moves to dismiss once

4    more, seeking the complete and final dismissal with prejudice that Plaintiffs

5    anticipated in the Prior Action (and tried to delay by their voluntary dismissal).

6    **II.  PLAINTIFFS' ALLEGATIONS**

7          The Court at this stage assumes the truth of well-pleaded factual allegations.

8    *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To avoid any doubt, USC disputes

9    Plaintiffs' allegations.  USC summarizes only the key allegations and changes here.

10         As before, the only allegations that matter are those specifically concerning the

11   two named Plaintiffs, each of whom must individually state a claim.  *See Bautista v.*

12   *Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000) ("Each plaintiff's right to relief

13   therefore depends upon proof of the operative facts giving rise to an enforceable right

14   in favor of that plaintiff.").  Plaintiffs cannot establish that the named Plaintiffs'

15   claims are sufficient to proceed by relying on the allegations of class members—yet

16   that is precisely what the Complaint attempts to do.  *See, e.g.*, ¶¶ 91, 102, 127, 128

17   (defining "Plaintiffs" to include the named Plaintiffs *and* class members).  Such

18   generalized allegations are not well pleaded.  *See e.g.*, *Bautista*, 216 F.3d at 840;

19   *Ewalt v. GateHouse Media Ohio Holdings II, Inc.*, 2023 WL 2018775, at *4 (S.D.

20   Ohio 2023) ("courts may only consider the allegations of the named plaintiffs, and

21   not the generalized allegations of … putative class members"); *Parm v. Nat'l Bank of*

22   *Cal., N.A.*, 242 F. Supp. 3d 1321, 1342 (N.D. Ga. 2017) (same).

23     **A.  The Student Plaintiff's Allegations**

24         The Student Plaintiff's individualized allegations remain the same.  She

25   remains a Jewish "hybrid physical therapy student at USC's Health Science campus"

26   who "do[esn't] travel to campus very often."  Compl. ¶ 105.[1]  Her allegations focus

27

28         [1] The hybrid physical therapy program is a graduate-level program that (footnote continued)

on USC's selection of its Class of 2024 valedictorian, a biomedical engineer. *Id*. ¶¶ 102-124. The Student Plaintiff asserts that the valedictorian has "strong anti-Semitic beliefs" and faults USC for choosing to organize a commencement ceremony that did not include a speech from the valedictorian. *Id*. ¶¶ 109-112. As a result, the Student Plaintiff says, students protested "USC's decision not to let a pro-Palestinian … valedictorian speak at its main graduation ceremony." *Id*. ¶ 111.

The Student Plaintiff identifies three incidents that she says caused her emotional harm (two of which involved criticism of USC). First, the student "encountered several posters" on the health sciences campus that advocated for the valedictorian. *Id*. ¶ 112. They contained a hashtag slogan ("#Let [Her] Speak"), a picture of the valedictorian, and listed her major and minor. *Id*. Second, the Student Plaintiff alleges that a professor sent out an email that "asked everyone in the department to sign a petition to allow [the valedictorian] to speak." *Id*. ¶ 115. The professor sent another email encouraging students to attend a "silent march" supporting the valedictorian: "When USC silences [the valedictorian] they are silencing all of us." *Id*. ¶ 116. Last, the Student Plaintiff alleges that she was asked by a friend "what [her] opinion was on the topic of USC's decision to take [the valedictorian's] speech away." *Id*. ¶ 121. This question, the Student Plaintiff said, caused her to "fe[el] unsafe once again even among friends." *Id*. As a result of these incidents, the Student Plaintiff alleges that she experienced "fear and anxiety." *Id*. ¶ 124.

**B. The Faculty Plaintiff's Allegations**

The Faculty Plaintiff's individualized allegations also remain the same. She too remains a "Jewish Professor employed by and at USC." Compl. ¶ 91. According to the Faculty Plaintiff, an announcement by USC's provost "to keep [the student] as

---

combines online and in-person learning. RJN at 2. USC's 79-acre health sciences campus is seven miles from the "undergraduate or the main campus," where Plaintiffs allege the protests took place. RJN at 1-2.

valedictorian yet not allow her to speak" caused "Anti-Semitic vitriol." *Id.* ¶ 98. After that, the Faculty Plaintiff alleges that she could not get to her office without being "accosted by protestors" asking offensive questions. *Id.* She also alleges that she was "spat on" by a group of protesters asking if she "Supported the Zionist baby killing entity." *Id.* The Faculty Plaintiff alleges a second instance where she was again "accosted" by protesters but "refused to engage." *Id.* ¶ 99. On her way back to her car from the office, she was "approached by a woman asking if [she] wanted to participate in a 'bake sale for Palestine.'" *Id.* The Faculty Plaintiff again "kept walking and refused to engage." *Id.* She does not identify any particular harm besides the indignity of being spat upon and related emotional distress.

## III. OTHER ALLEGATIONS

The allegations described above are specific to the two named Plaintiffs. Those allegations must be sufficient to establish a claim. *See, e.g.*, *Bautista*, 216 F.3d at 840; *Ewalt*, 2023 WL 2018775, at *4. As explained below, they are not.

The Complaint instead doubles down on irrelevant (and baseless) rhetoric. Plaintiffs continue to levy allegations against others not before the Court: George Soros (*id.* ¶¶ 12, 69, 77), USAID (foiled by DOGE) (*id.* ¶¶ 11, 29, 71), and the "Democrat Party" and "Legacy Media" (*id.* ¶¶ 2, 12a, 33, 69, 70, 76). How such actors relate to these two Plaintiffs' specific claims against USC is not apparent. "[P]laintiffs can[not] simply toss incomprehensible documents before the district court and have the court do the work of sorting out what should be pled." *Bautista*, 216 F.3d at 845 (O'Scannlain, J., concurring). Plaintiffs similarly re-apply the "Jew Exclusion Zone" label (taken from a different lawsuit against UCLA, discussed *infra*) to the supposed protest "encampment," and then repeat that buzzword over 60 times. *E.g.*, Compl. ¶ 35. "'[E]ntitle[ment] to relief,'" however, "requires more than labels." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs' other allegations are not well pleaded for the same reasons as before. Plaintiffs again allege the creation of a federal taskforce "to investigate

1    … allegations" of "campus antisemitism" at ten colleges, including USC.  Compl.

2    ¶¶ 27-28.  But "[a]llegations about allegations" are not well-pleaded facts.  *See Fed.*

3    *Trade Comm'n v. Walmart Inc.*, 664 F. Supp. 3d 808, 825 (N.D. Ill. 2023)

4    ("Allegations about allegations" are either not actionable or "not alleged with

5    particularity."); *cf. Conde v. Sensa*, 259 F. Supp. 3d 1064, 1070 (S.D. Cal. 2017)

6    ("[U]nproven state-court allegations may not validly support a … cause of action").

7        Other of Plaintiffs' allegations are flatly contradicted by the sources on which

8    they purport to rely.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)

9    (documents mentioned by complaint "incorporated by reference" in 12(b)(6) posture).

10   Plaintiffs say, for instance, that their Exhibit D shows that USC allowed "antisemitic

11   organizations … aligned with … anti-America terrorist groups" to "promulgate

12   antisemitic material via USC's official internet channel."  Compl. ¶ 46.  But the

13   attached exhibit, on its face, depicts a post from an Instagram account,

14   "@uscdivestfromdeath."  Ex. D.  As the account's name suggests, it is a non-USC

15   account that *criticizes* USC and calls for its divestment from Israel.  RJN at 1.  The

16   second post, too, is by "@uscscale," or the "USC Student Coalition Against Labor

17   Exploitation."  *Id*.  That also is not a USC account on its face.  *See* Ex. D.

18       Plaintiffs also copy and paste court orders and other pleadings from an entirely

19   separate case *against UCLA* into the Complaint (swapping out "UCLA" for "USC").

20   *See* App'x A (chart of misappropriated quotes).  These quotes from *Frankel* are

21   conclusions—not allegations.  Indeed, the *Frankel* Court reached them after

22   consideration of facts and evidence, although Plaintiffs attempt to repackage them as

23   "not in dispute" here.  Compl. ¶¶ 4-5.  This is a copy-and-paste job, not well pleaded

24   allegations, and USC unambiguously disputes them.

25                                    **ARGUMENT**

26       The Complaint "does not make out a cognizable legal theory" and "does not

27   allege sufficient facts to support a cognizable legal theory," so Rule 12(b)(6) requires

28   dismissal.  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th

Cir. 2011). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" carry no weight. *Augustus v. Cnty. of Los Angeles*, No. 2:20-cv-11255-FLA, 2023 WL 2799117, at *3 (C.D. Cal. 2023).

## I.   PLAINTIFFS' CIVIL RIGHTS CLAIMS FAIL.

### A.   Plaintiffs Again Fail to Allege USC Had the Intent to Violate Their Civil Rights or to Authorize Violence Against Them.

We start again with Plaintiffs' failure to plausibly allege the requisite specific intent harbored by USC. Plaintiffs again include claims under the Bane, Ralph, and Unruh Acts. *See* Cal. Civ. Code §§ 52.1(a), 51(b), 51.7(b)(1). As the Court previously held, all three statutes capture only *intentional* deprivations of a specifically protected right (for the Bane Act) or *intentional* harm on the basis of a protected characteristic (for the Ralph and Unruh Acts). Dismissal Order 5 (Bane Act), 11 (Unruh Act), 12 (Ralph Act). Plaintiffs must therefore allege that USC's "act of interference" with a civil right was itself "deliberate or spiteful." *Shoyoye v. Cnty. of L.A.*, 203 Cal. App. 4th 947, 959 (2012) (Bane Act); *Harris v. Cap. Growth Invs.*, 52 Cal. 3d 1142, 1175 (Unruh Act); *Gabrielle A. v. Cnty. of Orange*, 10 Cal. App. 5th 1268, 1291 (2017) (Ralph Act). Because Plaintiffs failed to plausibly allege specific intent in the Prior Action, the Court agreed that these claims could not proceed. *E.g.*, Dismissal Order 8 (explaining that Plaintiffs "merely set their conclusory assertion [of unlawful intent] in bold and italicized font" and why the alleged facts do not allow the Court to "infer Defendant's [unlawful] intent").

Plaintiffs' new claims—violation of 42 U.S.C. § 1981, Title VI, and Cal. Educ. Code § 220—face the same intent roadblock. Section 1981 requires Plaintiffs to show that USC "intentionally discriminated against [them] based on race." *Ray v. Am. Airlines, Inc.*, 755 F. Supp. 3d 1277, 1279 (C.D. Cal. 2024). And "Title VI" similarly "reach[es] only instances of intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001). When harassment by others is at issue in an educational environment, Title VI requires a plaintiff to show that the defendant

7

"intentionally acted … by remaining deliberately indifferent to acts of … harassment of which it had actual knowledge." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) ("deliberate indifference" is a "high standard" limiting liability to an organization's "own official decision").  The Title VI test also applies to an alleged violation of CAL. EDUC. CODE § 220.  *See Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1124 (E.D. Cal. 2011).

To state any of these six claims, Plaintiffs cannot merely allege that they were deprived of a civil right or effectively treated differently.  *See, e.g.*, *Est. of Miller v. Cnty. of Sutter*, 2020 WL 6392565, at *19 (E.D. Cal. 2020) (rejecting Unruh Act claims at the pleading stage).  Nor can they merely allege that USC "could or should have done more." *E.g.*, *M.L. ex rel. D.L. v. Concord Sch. Dist.*, 86 F.4th 501, 511 (1st Cir. 2023) (rejecting Title VI claim).  Where the allegations fail to support the requisite intent, they must be dismissed.  *E.g.*, *Landau*, 2025 WL 1796473, at *6 (dismissing protest-based claims against College for failure to make intent showing); *StandWithUs*, 742 F. Supp. 3d at 142 (same).

Plaintiffs cannot state a civil rights claim under this standard.  There are still *no* well-pleaded allegations showing that USC itself intended for any protestor to deprive Plaintiffs of their rights on the basis of religion or race.  There are *no* allegations that USC intended for any protestor to ask Plaintiffs questions, invite Plaintiffs to a bake sale, or ask them to sign a petition.  And, unsurprisingly, there are *zero* allegations that USC intended for a protestor to spit at one of its faculty members.  Moreover, Plaintiffs do *not* allege that they ever reported these incidents to USC—thus, there is no allegation that USC even knew about the particular incidents, let alone had specific intent to bring them about.  Plaintiffs' claims therefore cannot proceed at the outset.

The logic of the Court's Dismissal Order reinforces why Plaintiffs' claims continue to fail.  In the prior complaint, Plaintiffs asked the Court to infer USC's intentions from the acts of protesters and others.  The Court disagreed, explaining that it could not plausibly "infer [USC's] intent from the protestors' acts."  Dismissal

8

Order 8.  The Court also emphasized that Plaintiffs alleged an adverse relationship between USC and the protestors.  *Id*.  The Court accordingly held that "Plaintiffs' allegations actually support Defendant did not have the requisite intent, as they suggest Defendant and the protestors had adverse interests." *Id*.

The same is true here, so the same result is warranted.  ***First***, Plaintiffs repeat their error in alleging the acts of others—protestors, student groups, George Soros, and others—in an attempt to impute intent to USC.  *See Iqbal*, 556 U.S. at 682-83 ("various other defendants" may have had "impermissible reasons" but "petitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic").  As for the alleged viewpoints of others, academic environments host a wide variety of viewpoints that cannot all plausibly be imputed to USC as an institution.  *See Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 627 (E.D. Va. 2016).  Plaintiffs offer no explanation for how the alleged views of "faculty" who "support the Jewish state of Israel" (Compl. ¶ 33) and the views of other "professors" who "hate … Israel" (*id.* ¶ 94) can both simultaneously be attributed to USC.[2]  No inference of unlawful intent is permitted.

***Second***, Plaintiffs *elaborate* on the adverse relationship between USC and the protestors—once again negating any inference of shared unlawful intentions.  *See, e.g.*, *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014) ("taking into account the evidence in [p]laintiffs' own complaint that undermines their allegation"); *Wuxi Multimedia, Ltd. v. Koninklijke Philips Electronics, N.V.*, 2006 WL 6667002, at *9 (S.D. Cal. 2006) (courts "need not accept" allegations that are "internally inconsistent" in a 12(b)(6) posture).  According to Plaintiffs, agitators *protested USC*, accusing it of being "very complicit in violence"

_____

[2] Doubly so for the unnamed "guest and tenured professors," who "lectured students" about "the 'war crimes' of Jews" by pulling a bait-and-switch on USC.  *See* Compl. ¶ 31 ("Instead of teaching courses … for which they were hired…").  As for students, California's Leonard law prohibits private universities from disciplining enrolled students for merely articulating offensive ideas.  CAL. EDUC. CODE § 94367.

9

against Palestinians, and demanding that it divest from Israel.  Compl. ¶ 96.  After all, the Student Plaintiff complains of emails from a professor inviting students *to protest USC's* supposed "mistreat[ment]" of the valedictorian.  *Id*. ¶ 115; *see also* ¶¶ 112, 116, 121.  She specifically calls out posters on campus that *protested USC*.  *Id*. ¶ 112. *See also* Ex. D.  No inference of shared intent is plausible.

*Third*, Plaintiffs continue to allege—and again expound upon—USC's actions that *responded to disruptions caused by protestors*, which negates any inference of shared intent.  According to Plaintiffs, USC "made the decision to call in the LAPD," to "clear the Encampment" of protestors, and to "arrest 93 people on suspicion of trespassing."  *Id*. ¶¶ 13, 32, 35, 38, 52, 76, 134.[3]  Plaintiffs further allege that when protestors attempted to set up a second disruptive encampment, that attempt was "quelled *in a matter of hours*."  *Id.* ¶¶ 13, 38, 134 (emphasis added).  The Complaint incorporates an article that further shows that "the university had started the disciplinary process for people who had violated laws or campus policies."  B. Haring, *USC Pro-Palestinian Encampment Cleared Again By Police*.[4]  And previous versions of the Complaint incorporated reports showing that USC "won't tolerate … illegal encampments,"[5] that a swastika drawn on campus (*see* Ex. E) was immediately removed, that USC rejected the protestors' demands to issue "political statements," and that USC "condemned all forms of … antisemitic symbols."[6]  All that is properly

---

[3]  This is flatly inconsistent with Plaintiffs' (false) new and conclusory allegation that USC "hir[ed] private security guards that reinforced the Jew Exclusion Zone … and instruct[ed] law enforcement officers—including the LAPD—not to intervene."  Compl. ¶ 150.

[4]      https://deadline.com/2024/05/usc-pro-palestinian-encampment-cleared-police-1235904798/ (last accessed Aug. 1, 2025) (cited Prior Action, ECF 77 ¶ 118).

[5]  Video at 0:05-0:18, KTLA 5, *Police clear protest encampment at USC*, https://www.youtube.com/watch?v=v7ibgdWRMkg (Aug. 1, 2025) (cited Prior Action, ECF 77 ¶ 85).

[6]  Video at 2:30-2:50, 3:38-3:55, NBCLA, *Swastikas found on USC campus* https://www.youtube.com/watch?v=XqbZtOuKVVo (last accessed Aug.1, 2025) (Prior Action, ECF 77 ¶ 86).

considered.  *E.g.*, *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846 (N.D. Cal. 2022) (collecting authority and explaining "[t]he Court does not ignore the prior allegations in determining the plausibility of the current pleadings").  Such allegations negate any inference of unlawful intent by USC and warrant dismissal.  Indeed, other courts have found such allegations to be dispositive when dismissing complaints that stem from campus protests.  *See StandWithUs*, 742 F. Supp. 3d at 142 (University's decision to "arrest[] trespassing students" negated deliberate indifference); *Landau*, 2025 WL 1796473, at *11 ("effort to quell the unrest" not deliberate indifference).

Plaintiffs try to impute a discriminatory intent to USC by alleging that it acquiesced to protestors' demands for "megaphones, food, water bottles and other necessities of life."  *E.g.*, Compl. ¶ 55.  Assuming those allegations are true (they are not), in Plaintiffs' own telling, such actions were part of USC's attempt "to appease … and negotiate with the Campus Terrorists."  *E.g.*, *id*. ¶ 66.  Indeed, the Complaint asserts that USC's Trustees "decided to enact an 'appeasement policy' to deal with the problem."  *Id.* ¶ 45; *see also id*. ¶¶ 8, 45, 47, 52, 53, 65, 66, 90, 100, 124, 132, 142b, 157, 199 (each levelling additional, conclusory allegations of "appeasement").  One "appeases" or "negotiates" with an *adversary*—not a sympathizer.  Even assuming for the purposes of this motion that USC gave "campus terrorists" the "necessities of life," that no more supports an inference that USC intended to harm these Plaintiffs than an inference that a hostage negotiator shares the aims of a hostage taker when he gives food and water to the captor.  *See Iqbal*, 556 U.S. at 682; *cf. Negotiator's tricks: pizza and patience*, Columbus Dispatch (May 27, 2007) ("when escaped convict Billy Jack Fitzmorris held Geneva Erb hostage … negotiators ordered him the pepperoni and sausage pizza he requested").[7]

In any event, any potential inference of shared intent is expressly negated here.

---

[7] Available at https://www.dispatch.com/story/news/2007/05/27/negotiator-s-tricks-pizza-patience/23758229007/ (last accessed Aug. 1, 2025).

As the Dismissal Order previously emphasized, USC is alleged to have *taken actions to promote the safety of its students and faculty* from alleged outside agitators. Dismissal Order 7 (citing the predecessor to Compl. ¶ 66 and concluding that "the opposite" of what Plaintiff needs to allege "appears true, *i.e.*, Defendant was attempting to protect Plaintiffs from potential harm"). Because Plaintiffs have not alleged—and have, in fact, negated—any inference of unlawful intent, all six of these claims must be dismissed.

### B. Plaintiffs' Civil Rights Claims Fail for Additional Specific Reasons.

While Plaintiffs' failure to allege the requisite intent dooms all of Plaintiffs' civil rights claims, each also fails for additional reasons.

#### 1. Bane Act (Count 1)

Plaintiffs fail to allege an applicable protected right under the Bane Act. A Bane Act plaintiff "must allege … a constitutional violation" as well as the above discussed "specific intent to violate" that right. *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1017 (C.D. Cal. 2020). USC previously explained that the Plaintiffs' Bane Act claim failed for failure to allege the right that USC supposedly violated. In response, Plaintiffs now say that the alleged constitutional right—and their chosen theory—is a violation of the Fourteenth Amendment. Compl. ¶ 140. That is a different right than what the Court previously assumed to be at issue, Dismissal Order 4, but Plaintiffs are "master[s]" of their Complaint and "responsible for articulating cognizable claims." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021).

It is black-letter law that a Fourteenth Amendment violation requires state action. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). That is missing here: USC is a *private* university. *E.g.*, Compl. ¶ 125. And the Bane Act does not circumvent that state-action requirement. *See, e.g.*, *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 332-33 (1998). A "plaintiff [can]not recover on a Bane Act claim against private actors predicated upon the violation" of constitutional rights with a state action requirement "since the rights can only be interfered with by a state actor."

*Ernesto Jasso v. Cnty. of Los Angeles et al.*, 2015 WL 13916216, at *8 (C.D. Cal. 2015).  This alone defeats Plaintiffs' Bane Act claim.

Even if Plaintiffs could circumvent the state-action requirement, their Bane Act claim would still fail.  The Court previously identified additional elements that were missing from Plaintiffs' allegations:  "Plaintiffs do not … [plausibly] allege Defendant threatened, intimidated, or coerced Plaintiffs into believing that, if Plaintiffs [exercised a protected right], Defendant would commit violence against them."  Dismissal Order 7.  "To the contrary," the Faculty Plaintiff "allege[s] the *protestors* threatened [her]."  *Id.* (emphasis in original).  Those flaws remain.  Similarly, the Student Plaintiff does not allege any specific threats against her, any objectively reasonable fear of violence, or any apparent ability to carry out an actionable threat.  *See also* Cal. Civ. Code § 52.1(k) (requiring "specific" threats of violence when communications are at issue).  She cannot state a claim.  *See Smith v. Cnty. of Santa Cruz*, 2020 WL 6318705, at *10 (N.D. Cal. 2020), *aff'd*, 2022 WL 2287429 (9th Cir. 2022); *cf. Gerwaski v. Nevada*, 2025 WL 1294107, at *6 (D. Nev. 2025) (allegations of "wholly subjective" apprehension and distress in campus protest case not actionable).

### 2. Unruh Act (Count 2)

The Faculty Plaintiff's Unruh Act claim was previously dismissed with prejudice.  Dismissal Order 10 (collecting authority).  That was a final determination on the merits, on the same claim, and between the same parties.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006).  Plaintiffs cannot avoid a with-prejudice dismissal by bringing the claim in a subsequent lawsuit.  In any event, because "the Unruh Act does not apply to an employer-employee relationship," dismissal of the Faculty Plaintiff's claim is again proper.  Dismissal Order 10 (collecting authority).

The Student Plaintiff again fails to allege the elements of the Unruh Act.  Dismissal Order 10-11 (analyzing elements).  As before, she merely asserts that "USC's conduct was a substantial factor in causing Plaintiffs' harm."  Compl. ¶ 154.

1   But the facts alleged show that it was the "outside agitators"—not USC—who caused

2   any cognizable harm here.  The claim thus fails again.

3       Moreover, the Student Plaintiff's allegations fail to show any denial of "full

4   and equal accommodations" (CAL. CIV. CODE § 51(b)) or that she was a "*person*

5   *aggrieved*" by the denial at issue (CAL. CIV. CODE § 52(c) (emphasis added)).  "[A]

6   plaintiff who only learns about the defendant's allegedly discriminatory conduct, but

7   has not personally experienced it, cannot establish [statutory] standing" under the

8   Unruh Act, even when they are a member of the relevant protected class.  *Osborne v.*

9   *Yasmeh*, 1 Cal. App. 5th 1118, 1133 (2016); *see also White v. Square, Inc.*, 7 Cal. 5th

10  1019, 1025 (2019) ("[A] plaintiff cannot sue for discrimination in the abstract, but

11  must actually suffer the discriminatory conduct.") (quotation marks omitted).  Here,

12  the Student Plaintiff alleges an encampment on the "undergraduate or the main

13  campus."  Compl. ¶¶ 49, 68, 113.  But she is a "hybrid" graduate student "at USC's

14  Health Science campus," who—although she "do[es not] travel to campus very

15  often"—travels to a different campus miles from where the encampment took place.

16  *Id*. ¶ 105.  And the Student Plaintiff's personal diary only recounts events at the health

17  sciences campus.  *Id*. ¶¶ 104-105.  To the extent the encampment could be considered

18  a denial of access, the Student Plaintiff was not harmed by it or in its proximity.

19      Plaintiffs' own allegations (again assuming their truth) belie the notion that

20  others were excluded from the encampment *on the basis of religion*.  As in *Landau*,

21  "Plaintiffs aver that *any person* who walked by the Encampment and did not express

22  support for [protesters'] goal[s]" were excluded.  2025 WL 1796473, at *10

23  (dismissing Title VI claim) (emphasis in original) (quotation marks omitted); Compl.

24  ¶ 50.  That is not discrimination based on religion—as Plaintiffs *expressly* admit:

25  "[T]his may have prevented a pro-Israel Christian from entering the zone and

26  permitted access for a Jewish person" who agreed.  *Id*.  Indeed, Plaintiffs allege that

27  members of "Jewish Voices for Palestine" (again, not USC) perpetrated the campus

28  protest, asserting that organization is a "Jewish anti-Zionist organization."  Compl.

¶ 9. In short, Plaintiffs say Jews and non-Jews alike were excluded. That does not state an Unruh Act claim.

### 3. Ralph Act (Count 3)

Plaintiffs' Ralph Act claim again fails because "*the defendant*"—*i.e.*, USC—did not—"threaten[] or commit[] violent acts against the plaintiff," *Gabrielle A.*, 10 Cal. App. 5th at 1291 (emphasis added), and hostility based on "race or religion" was not "a 'substantial motivating reason' for [USC's] conduct," Dismissal Order 12. Indeed, given that neither Plaintiff alleges that their Jewish identity was known (apart from the student's friend, *see* Compl. ¶ 121), neither could have been discriminated against *because* they are Jewish. Plaintiffs similarly do not allege that USC ever knew of the specific incidents about which they complain. *See id.* ¶¶ 121-122.

In fact, the Student Plaintiff does not describe any specific threats of violence against her in the instances of which she complains. *See* CAL. CIV. CODE § 51.7(e)(1)(A). "[T]here are no allegations [in Student Plaintiff's diary] that constitute true threats, incitement, fighting words, obscenity, or any other category of unprotected speech," so USC "cannot be threatened with civil liability" in connection with those communications. *See Landau*, 2025 WL 1796473, at *2-3; *see also* M. BENDER, 11 CALIFORNIA FORMS OF PLEADING AND PRACTICE ANNOTATED § 117A.13 (2025) (Ralph Act "remedies are limited to those who themselves have been the subject of threats, intimidation, coercion, or violence.").[8]

### 4. Title VI (Count 10)

Plaintiffs' new Title VI claims fail for several independent reasons. To start,

---

[8] Plaintiffs allege that "water bottles were … used as weapons" against "Jewish students and others." Compl. ¶¶ 16, 55. But neither Plaintiff alleges that a water bottle was thrown at her. As discussed, the Student Plaintiff's individual allegations are limited to the health sciences campus. Though the Complaint later asserts that "Campus Terrorists" "threatened" to throw "water bottles" at "Plaintiffs," *id.* ¶ 180, "Plaintiffs" are defined to include putative class members. *E.g.*, *id.* ¶¶ 91, 102, 127, 128. Such generalized allegations do not support the named Plaintiffs' claims.

only an "intended beneficiary" of a federally funded program may bring a Title VI claim. The Faculty Plaintiff is an *employee* of a University that receives federal funds—she is not, and does not allege, that she is an intended beneficiary of a funded program. *See Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000) *aff'd* 62 F. App'x 28 (2d Cir. 2003) ("intended beneficiaries" of University funding "were the participating students, not the professors"); *see also Johnson v. Trans. Agency, Santa Clara Cnty., Cal.*, 480 U.S. 616, 628 n.6 (1987) (Congress did not intend "receipt of any form of financial assistance might render an employer subject to … Title VI"). That defeats her claim. *See Groveman v. Regents of Univ. of California*, 2025 WL 391312, at *4 (E.D. Cal. 2025); *Concerned Jewish Parents v. Liberated*, 2024 WL 5274857, at *19 (C.D. Cal. 2024).

In any event, neither Plaintiff has alleged a "concrete, negative effect" on their education as required by Title VI. *Davis*, 526 U.S. at 654. "[T]his element requires a serious showing," such as where Plaintiffs were "forced to change their study habits or change schools, where they had a measurable drop in grades … or where they developed anxiety sufficient to require intervention." *Landau*, 2025 WL 1796473, at *12 (collecting authority). But Plaintiffs do not "articulate *any* concrete deprivation of educational benefit." *Id*. at *13 (emphasis in original). The Student Plaintiff's allegation of "fear and anxiety" is insufficient. *See id*. at *12-13 ("fear of hostility" insufficient). Her diary does not allege or describe any aspect of her degree that was impacted. Compl. ¶ 124. Once more, she is not an "undergraduate" on the "main" campus and does not allege that she traveled there during the protests or even intended to do so. *Id*. ¶ 49. The Faculty Plaintiff does not allege that she is pursuing any educational program at all. A conclusory list of lost "access" that is not specific to these two named Plaintiffs and does not state a claim. *Id*. ¶¶ 213, 218.

Nor does the Student Plaintiff's diary describe "severe, pervasive, and objectively offensive" conduct that worked to "deprive[] [her] of access to an educational activity." *Landau*, 2025 WL 1796473 at *1. She describes just three

incidents in her diary—seeing posters, receiving emails that *invited* her to a protest and Silent March, and a friend asking her about her opinion. That is not actionable.

Finally, neither Plaintiff alleges their personal experiences were reported to USC. *See Davis*, 526 U.S. at 650. That independently dooms their Title VI claims.

### 5. Section 1981 (Count 11)

Although Plaintiffs assert a Section 1981 violation, they never explain what that violation is. Section 1981 bars discrimination based on race. *See Ray*, 755 F. Supp. 3d at 1279. Plaintiffs merely recite that USC "excluded Plaintiffs from accessing university benefits" based on race as alleged in "Plaintiffs' claim for breach of contract." Compl. ¶ 233. That unexplained assertion is wholly conclusory. And it fails because (i) as described above, USC harbored no intent to discriminate against Plaintiffs because they are Jewish, and (ii) as described below, Plaintiffs have not pleaded an adequate contract claim.

### 6. Section 220 (Count 12)

Plaintiffs' CAL. EDUC. CODE § 220 claim fails for the same reasons as the Title VI claim. In any event, "section 220 does not apply to a postsecondary institution such as the University." *Karasek v. Regents of the Univ. of California*, 2015 WL 8527338, at *18 (N.D. Cal. 2015). It has no application here.

## II. PLAINTIFFS' TORT CLAIMS AGAIN FAIL.

The Court dismissed the Faculty Plaintiff's tort claims with prejudice. *See Leon*, 464 F.3d at 962. They cannot be brought again. In any event, her "tort claims are barred by the [Workers Compensation Act]'s exclusivity rule." Dismissal Order 14. The Student Plaintiff's claims are similarly futile.

### A. The Student Plaintiff's Intentional Tort Claims (Counts 7-8) Again Fail for Lack of Necessary Elements.

Once again, the Student Plaintiff does not allege any offensive or harmful touching. As before, that is dispositive. Dismissal Order 16-17. An allegation that she saw posters and received emails seeking support for the valedictorian does not

17

plausibly demonstrate a reasonable fear of imminent bodily harm.  *Id*.  The Student Plaintiff's assault and battery claims cannot proceed.  *See, e.g.*, *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004) (harmful or offensive touching is a necessary element of battery); *So v. Shin*, 212 Cal. App. 4th 652, 668 (2013) (assault requires a reasonable belief of an imminent harmful or offensive touching).  For the same reasons that Plaintiffs cannot show USC had specific intent to harm for their civil rights claims, their assault and battery claims fail too.

### B. The Student Plaintiff's Negligence Claims (Counts 4-5) Again Fail for Lack of Necessary Elements.

Without any actual physical harm alleged, the Student Plaintiff's negligence claim (Count 4) is actually a claim for negligent infliction of emotional distress ("NIED").  "This court agree[d]."  Dismissal Order 15 ("Plaintiff Student does not allege any physical harm … [she] cannot recover any damages on her negligence claim.").  The Student Plaintiff *still* fails to allege any physical injury, so her negligence claim must again be dismissed.

As to her NIED claim, the Student Plaintiff is outside of the set of well-defined special relationships necessary to state an NIED claim under California law.  *See generally Holliday v. Jones*, 215 Cal. App. 3d 102, 111 (1989); CACI No. 1620 (identifying "only three types of factual situations" where "[t]he California Supreme Court has allowed plaintiffs to recover damages as 'direct victims'").  "[N]o court has found that a university has a general duty of care to avoid emotionally harming students." *Rogers v. Western Univ. Health Sciences*, 2017 WL 11567381, at *4 (C.D. Cal. 2017); *accord Day v. California Lutheran Univ.*, 2024 WL 649239, at *5 (C.D. Cal. 2024).  But even then, seeing posters and receiving emails is not the kind of conduct that causes "a reasonable [person], normally constituted, [to] be unable to adequately cope with the mental stress engendered by the circumstances of the case."

1  *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 928 (1980).[9]

2  **III. PLAINTIFFS' REMAINING CLAIMS FAIL.**

3      **A.  Breach of Contract (Count 6)**

4        The Court's previous dismissal did not grant the Faculty Plaintiff leave to bring

5  a breach of contract claim.  Dismissal Order 16.  She has no contract claim to bring.[10]

6        In any event, neither Plaintiff has pleaded an adequate contract claim.  "To

7  sufficiently plead breach of contract under California law, the claimant must plead,

8  among other things, the contract either by its terms, set out verbatim in the complaint

9  or a copy of the contract attached to the complaint and incorporated therein by

10  reference, or by its legal effect."  *Singelyn v. PNC Bank Nat'l Ass'n*, 2023 WL

11  11915610, at *8 (C.D. Cal. 2023) (quotation marks omitted); *Green Crush LLC v.

12  Paradise Splash I, Inc.*, 2018 WL 4940825, at *8 (C.D. Cal. 2018) ("existence of a

13  contract … is a legal conclusion" for the court).

14        Here, Plaintiffs refer only generically to "contractual obligations owed to the

15  student Plaintiffs under its 2022 anti-discrimination policies."  Compl. ¶ 175.  But

16  Plaintiffs never specify which of USC's policies is implicated, what obligations (if

17  any) were owed to Plaintiffs under which policy, or which specific obligations within

18  a policy were supposedly breached.  Pleading acts that supposedly constitute a breach

19  is insufficient.  *See Singelyn*, 2023 WL 11915610, at *8.

20        Nor do the Plaintiffs offer well-pleaded allegations of contract damages.  *See*

21  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *Cabrera v.*

22  *Google LLC*, 2023 WL 5279463, at *6 & n.5 (N.D. Cal. 2023) (California contract

23  _____

24      [9] Plaintiffs also fail to show how negligence liability can be attributed to USC for a protest.  There can be no "liability" for a "protest" for the wrongful acts of *others*

25  "under a negligence theory."  *Cider Riot, LLC v. Patriot Prayer USA, LLC*, 544 P.3d 363, 375 (Or. App. Ct. 2024) (applying *N.A.A.C.P. v. Claiborne Hardware Co.*, 458

26  U.S. 886, 920, 925-92 (1982)); *Landau*, 2025 WL 1796473, at *2 ("institutions cannot

27  be threatened with civil liability for declining to censor … speech").

28      [10] Though the Court did not expressly preclude the Faculty Plaintiff from bringing a contract claim, it still fails for the reasons discussed in this section.

law requires "appreciable and actual damages"). Plaintiffs' list of conclusory "harms" makes no attempt to identify contract damages (i.e., actual economic harm) experienced by the named Plaintiffs. *See UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015). A statement that Plaintiffs have been damaged "in an amount to be proven at trial" is insufficient. *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *9 (C.D. Cal. 2023).

### B. Declaratory Relief (Count 9)

The Court previously held that the federal Declaratory Judgement Act controls. Dismissal Order 18. But "the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878-79 (9th Cir. 2022). Plaintiffs seek a declaration vindicating their Ralph Act, Bane Act, and Unruh Act claims. Compl. ¶ 204. Because those claims fail as discussed above, the request for declaratory relief necessarily fails as well.

## IV. THIS SHOULD BE THE LAST COMPLAINT AGAINST USC.

"[A] district court has discretion to deny leave to amend when there are countervailing considerations such as undue delay, prejudice, bad faith, or futility." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 955-56 (9th Cir. 2023) (quotation marks omitted). This case ticks all four of those boxes. Start with futility: This is Plaintiffs' *fourth* complaint. For the last two, they have had the Dismissal Order in hand to guide them. Plaintiffs have not changed the few factual allegations specific to their experiences.

As for undue delay, prejudice, and bad faith, let us review: Plaintiffs feared losing the Prior Action once and for all, so they dismissed it and engaged in forum shopping (forcing USC to incur the expense of removing the case again and dismissing it again). Plaintiffs have re-pleaded claims that the Court already dismissed with prejudice. They took conclusions from a court opinion about UCLA, changed "UCLA" to "USC," and then claimed those conclusions about UCLA are "not in dispute" here. Compl. ¶¶ 4-5; App'x A. And they have repeated allegations

over and over (296 paragraphs in all), hoping that the Court will accept pure length over substance. *Id.*

A *fifth* complaint is unwarranted. It is time for this case to end.


Dated: August 1, 2025                      Respectfully submitted,


                                           JONES DAY
                                           By: */s/ Rasha Gerges Shields*
                                               Rasha Gerges Shields
                                           Attorneys for Defendant
                                           UNIVERSITY OF SOUTHERN
                                           CALIFORNIA

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant University of Southern California, certifies that this brief contains 6,903 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 1, 2025                              Respectfully submitted,


                                                   JONES DAY
                                                   By: */s/ Rasha Gerges Shields*
                                                       Rasha Gerges Shields
                                                   Attorneys for Defendant
                                                   UNIVERSITY OF SOUTHERN
                                                   CALIFORNIA