Rasha Gerges Shields (Cal. Bar No. 218248)
rgergesshields@jonesday.com
Tyler J. Scott (Cal. Bar No. 341039)
tscott@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: +1.213.243.2719
Facsimile: +1.213.243.2539

Jeffrey D. Baltruzak (admitted *pro hac vice*)
jbaltruzak@jonesday.com
Daniel Paul Johnson (admitted *pro hac vice*)
dpjohnson@jonesday.com
JONES DAY
500 Grant Street Suite 4500
Pittsburgh, PA 15219
Telephone: +1.412.391.3939
Facsimile: +1.412.394.7959

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE JEWISH USC FACULTY MEMBER 2004 and DOE JEWISH USC STUDENT 1987, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a private public-benefit nonprofit corporation; JEWISH VOICES FOR PEACE ("JVP"), a business organization, form unknown; STUDENTS FOR JUSTICE IN PALESTINE ("SJP"), a business organization, form unknown; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-06375-MWC<br><br>[Notice of Related Case Pending: Case 24-cv-05712-FLA]<br><br>**DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT TO RULE 12(F)**<br><br>Date:   Friday, August 29, 2025<br>Time:  1:30 PM<br>Place: Courtroom 6A<br><br>Complaint Filed: July 9, 2025<br>Complaint Received: July 11, 2025<br>Complaint Removed: July 11, 2025 |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, August 29, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6A of this Court, located at 350 West 1st Street, Los Angeles, California, before the Honorable Judge Michelle Williams Court, Defendant University of Southern California ("USC") will and hereby does move, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and this Court's inherent powers, to strike Plaintiffs' class-action allegations concerning Jewish USC faculty and students.[1]

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the accompanying Request for Judicial Notice ("RJN"), the proposed order submitted herewith, the complete files and records in this action, the complete files and records in the predecessor to this action (*Doe Jewish USC Faculty Member 2004 et al. v. University of Southern California et al.*, No. 2:24-cv-05712-FLA (C.D. Cal. Jul 8, 2024)), the argument of counsel, and such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which began on July 25, 2025 and was completed telephonically on July 29, 2025, at Plaintiffs' counsel's request.

Dated: August 1, 2025

Respectfully submitted,

JONES DAY

By: */s/ Rasha Gerges Shields*
Rasha Gerges Shields

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

---

[1] Concurrently, USC is filing a motion to dismiss Plaintiffs' latest complaint with prejudice pursuant to Rule 12(b)(6).

# MEMORANDUM OF POINTS AND AUTHORITIES

This is Plaintiffs' second lawsuit and fourth complaint against the University of Southern California ("USC") arising from the acts of "third party protestors" during the Spring 2024 semester. Compl. ¶ 12. Plaintiffs, one a Jewish USC professor, the other a Jewish USC student, again bring claims against USC that are virtually identical to those previously dismissed by the Court (the Honorable Fernando L. Aenlle-Rocha) in Case No. 2:24-cv-05712-FLA, C.D. Cal. (the "Prior Action").

Plaintiffs originally brought the Prior Action on behalf of the same putative classes in state court in May 2024. *See id.*, ECF 1. After Plaintiffs filed an amended complaint in June 2024 (version two), USC removed the case to federal court, where the Court dismissed Plaintiffs' class allegations because Plaintiffs failed to respond to any of USC's arguments to strike them. *Id.*, ECF 72 at 20. Plaintiffs then filed another amended complaint in March 2025 (version three). *Id.*, ECF 77. Again, USC moved to dismiss it and to strike the class allegations, and the Court took USC's motion under submission in late April 2025. *Id.*, ECF 78, 81, 82, 83. On June 23, 2025, as the parties awaited the Court's decision on USC's motions, Plaintiffs abruptly changed course and voluntarily dismissed the Prior Action. *Id.*, ECF 84.

Now, Plaintiffs have filed another complaint—their fourth against USC—and it is déjà vu. Again, Plaintiffs fail to plead the existence of any of the requirements for class certification. Plaintiffs' new complaint also confirms that the purported class members **could include some of the protestors themselves**. And, as before, admissions made by Plaintiffs' own counsel defeat their ability to proceed with their class claims. *See id.*, ECF 17 at 9 (plaintiffs' counsel describing his difficulty searching for potential plaintiffs on USC's campus and noting that some putative class members supported the protests).

Once again, USC moves to strike Plaintiffs' class allegations.

# I. BACKGROUND

## A. The Named Plaintiffs

This case is about two named Plaintiffs who filed claims against USC following campus protests in the Spring of 2024 regarding the Israel-Hamas war. USC summarizes only the key allegations relevant to Plaintiffs' class-action allegations here.

Plaintiffs, who filed this case under pseudonyms, purport to be "a Jewish Professor employed by and at USC" (the "Faculty Plaintiff") and "a [Jewish] hybrid Physical Therapy student at USC's health science campus" (the "Student Plaintiff"). Compl. ¶¶ 91, 105. The Student Plaintiff is purportedly suing in an "individual capacity as a Jewish USC [student] who suffered damages harm and was stigmatized as a result of USC's conduct, and as a representative on behalf of all others similarly situated Jewish students." *Id.* ¶ 128. The Faculty Plaintiff is purportedly suing in an "individual capacity as a Jewish USC professor who suffered damages, harm and was stigmatized as a result of USC's conduct, and as a representative on behalf of all others similarly situated Jewish professors." *Id.* ¶ 127. For the convenience of the Court, the Plaintiffs' "diaries" detailing each named Plaintiff's specific allegations can now be found at ¶¶ 91-124 (pp. 28-34) of the current complaint (the "Complaint").

### 1. *The Student Plaintiff's Allegations*

The Student Plaintiff is a Jewish "hybrid physical therapy student at USC's Health Science campus" who "do[esn't] travel to campus very often." *Id.* ¶ 105. She alleges that she is "the only Jewish student in her entire class" and that only one of her classmates knows that she is Jewish. *Id*. ¶¶ 120-122. For context, the hybrid physical therapy program is a specialized, graduate-level program that combines online and in-person learning. RJN at 2. And USC's 79-acre health sciences campus, where the in-person component of that program takes place (Compl. ¶ 105), is seven miles from the "undergraduate or the main campus" (Compl. ¶ 113), where Plaintiffs allege the protests took place (RJN at 1-2; *see, e.g.*, Compl. ¶¶ 47, 68 (noting "pro-

2

Hamas rallies" at "Bovard Hall," and a corresponding "encampment" "in the center of campus")).

The Student Plaintiff's allegations focus on USC's selection of its Class of 2024 valedictorian, a biomedical engineer. Compl. ¶¶ 102-124. The Student Plaintiff asserts that the valedictorian has "strong anti-Semitic beliefs," shown by "publish[ing] several statements advocating for 'the complete abolishment of the state of Israel.'" *Id*. ¶¶ 109-110. She also alleges that the title of the valedictorian's minor, "resistance to genocide," has been used by unnamed "anti Israeli protestors … to justify the acts of October 7th." *Id*. ¶ 108. By selecting a valedictorian with this minor and these alleged opinions, the Student Plaintiff says, USC has itself "encouraged" an anti-Jewish "narrative." *Id*. ¶ 109.

The Student Plaintiff identifies three incidents following the valedictorian selection that she says caused her to "no longer feel safe on campus." *Id*. ¶ 112. First, the student "encountered several posters" on the health sciences campus that advocated for the valedictorian. *Id*. These posters contained a hashtag slogan ("#Let [Her] Speak"), a picture of the valedictorian, and the names of her major and minor. *Id*. Second, the Student Plaintiff alleges that an unidentified professor sent out an email that "asked everyone in the department to sign a petition to allow [the valedictorian] to speak." *Id*. ¶ 115. The professor then sent another email encouraging students to attend a "silent march" supporting the valedictorian: "When USC silences [the valedictorian] they are silencing all of us." *Id*. ¶ 116. Third, the Student Plaintiff was asked by a friend "what [her] opinion was on the topic of USC's decision to take [the valedictorian's] speech away." *Id*. ¶ 121. This question, the Student Plaintiff said, caused her to "fe[el] unsafe once again even among friends." *Id*.

As a result of these incidents, the Student Plaintiff alleges that she experienced "fear and anxiety." *Id*. ¶ 124. She does not allege physical harm or any other injury.

       2.   *The Faculty Plaintiff's Allegations*

According to the Faculty Plaintiff, an announcement by USC's provost "to keep [the student] as valedictorian yet not allow her to speak" caused "Anti-Semitic vitriol." *Id.* ¶ 98. After that, the Faculty Plaintiff alleges that she could not get to her office without being "accosted by protestors" asking offensive questions. *Id*. She also alleges that she was "spat on" by a group of protesters asking if she "[s]upported the Zionist baby killing entity." *Id*. The Faculty Plaintiff then says that she chose to work from home for an unspecified time. *Id*. When she returned to campus, the Faculty Plaintiff states that she was again "accosted" by protesters but "refused to engage." *Id.* ¶ 99. And on her way back to her car, she was "approached by a woman asking if [she] wanted to participate in a 'bake sale for Palestine.'" *Id*. Again, the Faculty Plaintiff "kept walking and refused to engage." *Id*.

The Faculty Plaintiff's harm consists of the indignities arising from the spitting incident and fear for her safety. *Id.* ¶¶ 98-100.

### B. The Complaint's Class-Action Allegations

The Complaint also alleges that "Jews who took classes, studied or worked at USC were disparately impacted" by USC, and that some "Jewish students and faculty … were in the middle of taking and grading final exams" during the campus protests. *Id.* ¶ 7c. Plaintiffs also allege that other "Jewish students and faculty were denied access or the same access to ordinarily available programs, activities, and campus areas." *Id.* ¶ 17. As a result of these alleged facts and USC's alleged actions, Plaintiffs claim that they and "other Jewish Students and Faculty members have been deprived of the ability and opportunity to fully participate in Defendant University's educational and other programs and have been placed at severe emotional and physical risk." *Id.* ¶ 86.

Plaintiffs expressly allege that "there are over 7,000 full-time Jewish USC faculty members" and "over 3,000 full-time Jewish USC students." *Id.* ¶ 129. And that these Jewish faculty members and students "share the same common interests,"

like "wanting to be safe and free from … harm including stigmatization, status discrimination, religious discrimination, assault, battery and other general damages." *Id*. ¶ 130.

In addition to USC, Plaintiffs have sued a "Jewish anti-Zionist" organization named "Jewish Voices for Peace" (JVP), which, according to Plaintiffs, "orchestrated" the protest encampment at USC. *Id*. ¶¶ 5, 9.

## II. ARGUMENT

Plaintiffs' class allegations should be stricken. "Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. 2013). Striking class allegations at the pleading stage "avoid[s] the expenditure of time and money that must arise from litigating spurious issues." *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (quotation marks omitted).

### A. Plaintiffs Do Not Plead the Requirements for Class Certification.

As in their prior three complaints, Plaintiffs fail to plead the existence of any of the requirements for class certification, including that their claims are typical of the alleged class, that they are adequate representatives, that common issues exist, or that common issues predominate. This alone dooms their class allegations. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158, 160 (1982) (noting that where a complaint lacked any "specific presentation identifying the questions of law or fact that were common to … the class," it was error for the district court to presume that plaintiff's claim was typical of the class, and stating that "[s]ometimes the issues are plain enough from the pleadings…"); *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *11 (N.D. Cal. 2013) (*reconsidered on other grounds*) (holding that complaint "must make a prima facie showing that Fed. R. Civ. P. 23(a) and 23(b) can be satisfied"); *Roberts v. Target Corp.*, 2012 WL 400030, at *1 (W.D. Okla. 2012) (granting motion

to dismiss class allegations where complaint "contains no facts in support of any of the elements of a class action claim under Rule 23"); *Schilling v. Kenton Cnty., Ky.*, No. 10-143-DLB, 2011 WL 293759, at *7 (E.D. Ky. 2011) (dismissing class allegations for failing to define a class that could be ascertained in an objective manner and for failing to satisfy Fed. R. Civ. P. 23(a) prerequisites).

### B. Plaintiffs Are Not Typical or Adequate Class Representatives.

Plaintiffs have made no attempt to show they are typical or adequate class representatives. The Student Plaintiff, for instance, baldly asserts that she sues on behalf of similarly situated Jewish students. Compl. ¶ 128. But the Complaint alleges that the Student Plaintiff is a hybrid graduate student who does not travel to the "main" campus (and evidently did not encounter any of the protest activity that took place there), that she is the *only* Jewish student in her hybrid class, and that her Jewish identity is not known to the campus community at large. *Id*. ¶¶ 105-122.

Moreover, the Student Plaintiff also does not adequately allege many elements of her claims. The Complaint makes no attempt to explain why a hybrid graduate student who does not allege travel to the main campus and did not experience much of the conduct complained of is a typical and adequate representative for Jewish students at-large. Similarly, Plaintiffs have no allegations that establish why the Faculty Plaintiff would be a typical and adequate representative for Jewish faculty members at-large.

### C. The Putative Classes Could Include Individuals Who Either Suffered No Harm or Who Present Fundamental Conflicts of Interest.

#### 1. *The Putative Classes Likely Have Countless Members With No Claim.*

Plaintiffs claim that "there are over 7,000 full-time Jewish USC faculty members" and "over 3,000 full-time Jewish USC students." *Id*. ¶ 129. To the extent that Plaintiffs' purported classes include all USC faculty and students who identify as Jewish, such classes would include countless individuals who were not present on campus during the protests and who were not harmed by the protests. This is another

independent reason to strike Plaintiffs' class allegations. *See, e.g., Lyons v. Bank of Am., NA*, No. 11-1232-CW, 2011 WL 6303390, at *7 (N.D. Cal. 2011) (granting motion to strike where "the proposed class includes many members who have not been injured"); *Tietsworth*, 720 F. Supp. 2d at 1146-47 (striking class allegations where the proposed class included individuals who had no problems with the purportedly defective product); *Sanders*, 672 F. Supp. 2d at 991 (striking class allegations because the proposed class definition "necessarily includes individuals who did not purchase" the product at issue or did not see the challenged advertising).

### 2. *Plaintiffs' Class Definition Could Include the Very Protestors Plaintiffs Complain of.*

Importantly, these putative classes could also include countless individuals who supported or chose to participate in the protests. Plaintiffs' own counsel has conceded in a sworn declaration that he struggled to find a Jewish student plaintiff to bring these claims because some of them "support the protests." Prior Action, ECF 17, at 9. And according to Plaintiffs' Complaint, Jewish students and faculty at USC have varying views, opinions, and reactions concerning the campus protests: In addition to USC, Plaintiffs have sued JVP, which they describe as "the largest progressive ***Jewish*** anti-Zionist organization in the world." Compl. ¶ 9 (emphasis added). According to Plaintiffs, JVP "created and organized" the protest encampment at USC. *Id.* ¶ 12. In short, Plaintiffs' putative classes could include JVP members who are both Jewish and who "orchestrated" the protests (*Id.* ¶ 5), creating intra-class conflicts of interest. *E.g.*, *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 177-78 (C.D. Cal. 2007) ("a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class") (internal citation and quotation omitted) (collecting authority and finding fundamental conflicts of interest existed amongst the proposed class members).

### D. The Putative Classes Require Individual Inquiries.

While Plaintiffs' class definitions are not entirely clear, membership for both appears to turn on "damages, harm and … stigmatiz[ation]." Compl. ¶¶ 127-128. That would require a highly individualized inquiry into the factual circumstances of each potential class member, including whether they suffered damages and were stigmatized. Thus, the Court "would be forced to engage in individual inquiries of each class member" to determine whether each was harmed. *Sanders*, 672 F. Supp. at 991. Such a class cannot proceed. *E.g.*, *Naiman v. Alle Processing Corp.*, 706 F. Supp. 3d 892, 902-03 (D. Ariz. 2020) (collecting authority and striking class claims that would require individual interviews).

In conducting these fact-intensive inquiries, the Court would have to also inquire into the potential class members' political views to assess whether they opposed or supported the protests. It's worth saying again: ***Plaintiffs' class definitions could include some of the people who purportedly harmed them in the first place***. Plaintiffs' counsel has conceded that, while searching for months for plaintiffs to bring these claims, the "vast majority of Jewish USC students" that he spoke with "declined to participate in the lawsuit" for reasons including "***because they believed that the harm or damage was trivial***" or "***because they support the protests***." Prior Action, ECF 17, at 9 (emphasis added).

Thus, while Plaintiffs claim that "[j]udicial economy and efficiency will be served by treating and certifying this matter as a class action" (Compl. ¶ 131), the result—a time-consuming, case-by-case analysis of each potential class member's experiences on campus during the protests, and an assessment of their individual views toward the Israel-Hamas war—is in fact the opposite.

### III. CONCLUSION

USC respectfully requests that this Court strike Plaintiffs' class allegations.

| | |
|---|---|
| Dated: August 1, 2025 | Respectfully submitted, |
| | JONES DAY |
| | By: */s/ Rasha Gerges Shields* <br>     Rasha Gerges Shields |
| | Attorneys for Defendant <br> UNIVERSITY OF SOUTHERN CALIFORNIA |

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant University of Southern California, certifies that this brief contains 2,603 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 1, 2025

Respectfully submitted,

JONES DAY

By: */s/ Rasha Gerges Shields*
    Rasha Gerges Shields

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA